Good morning, Your Honors. May it please the Court, my name is Mike F. Farge and I'm here for the appellant, William Diss. This appeal is fundamentally about three different issues for the Court's consideration. First is, can a public school compel a public school teacher who is a devout Catholic to collaborate and support Planned Parenthood in his classroom? The second main issue is whether there's a dispute of fact whether Mr. Diss was terminated for performance or whether those reasons for his termination were pretextual in nature and he was actually qualified for employment. We contend that the District Court ignored vast factual evidence on the record to conclude that he was not qualified for his job and that he was properly terminated for a cause. Third issue, Your Honors, is whether qualified immunity protects individual defendants who terminate an employee for their religious beliefs and their advocacy outside of the classroom for their beliefs. What this case is not about, Your Honors, is anything that Mr. Diss tried to do in the classroom to impose his beliefs on others. It's not about what he tried to do to this teen outreach program presenters. It's not about what he did to Planned Parenthood or its employees. This case is about him trying to be protected, trying to be accommodated based on his faith and trying to be free from discrimination based on his religion. Counsel, could you point us in the record where the plaintiff requested accommodation? It's in his transcript. It's in his deposition transcript, Your Honor. I can pinpoint the citation. Could you please? Yes. As well as the deposition transcript testimony of his attorney, Sharon Nelson, who attended one of the meetings between him, her, and three different school administrators. Counsel, of course, by the time people were deposed, it was long after the fact. So I think what you're saying, I want to make sure I understand, that your contention is that the deposition blurbs that you're pointing out raised an issue of fact about whether the request for accommodation was made in the earlier meeting. Is that right? Correct. He requested it during the meeting. And the date of the meeting, if you could remind me. I have this huge timeline, but could you remind me of the date of the meeting? There were meetings on, repeated meetings, September 17, 2000. No, no, no. I mean the meeting where the request, to answer Judge Rawlinson's question, the one, the meeting you mean. Which one is it? That meeting, well, first of all, I want to point out that what Mr. Diss said in his declaration is he was consistently requesting to be accommodated every time the teen outreach program was presented by these Planned Parenthood employees. So your question, Your Honor, was what was the date of the meeting? This meeting, I believe, was September 19, 2012. I was asking for a specific place in the record that I can go to to confirm the requested accommodation, when the request was made and what the specific request was. I'll have to reserve that for Roboto. I'll get you the pinpoint citation. I apologize, Your Honor. It's contained both in his deposition transcript testimony as well as his declarations. What did he want? What accommodation did he want? He wanted to be excused from the presence of the Planned Parenthood employees so that he would not be associated with that entity, which he, as a matter of his devout Catholic faith, believed was inherently evil. So his genuine religious belief is he's sinning by being present without being disruptive? Not without being disruptive, without being excused by the mere association and appearance of support. He was directly instructed by the administrators to support and collaborate with Planned Parenthood in his classroom. And he believed that's a little bit strong. Where is it in the record that he was asked to collaborate and support Planned Parenthood? He was just told to let them speak. He was told to take attendance, which he was dilatory on. He admittedly delayed taking the attendance. He did not admit that, Your Honor. He did not admit it, but he didn't dispute it. He didn't dispute that he took the attendance. Counsel, can I cut to the chase on this? I think your other argument that for me is most problematic, meaning strongest, if you could answer that one, is that there was a flyer that was sent home to parents that indicated or gave notice that the presenters were going to be taking place in his classroom. And I think it said, with his coordination or something like that. If you could give me the ER site, I'll go right to it. But you know the one I mean. Yes, Your Honor. And so my understanding of your strongest argument is that he felt implicated by that because the notice was that this was going to take place in his class. Is that? That actually occurred after the fact, Your Honor, and I think bears out what his original concern was, that by him being in the classroom, by the Planned Parenthood employees being in Mr. Dis' classroom, that is what would lead him to be associated with and appear to support. So yes, he was Do I have the chronology wrong? That flyer announcing this was going to happen actually went out after the fact? Yes, Your Honor. That's my understanding. I see. All right. So maybe that's not your strongest argument. What is your strongest argument? Was he implicated by having them come in and do the enrollment in his classroom? Based on the strength of his faith and based on what he believed, he would be associated with this great moral evil just by his presence. His belief was that that caused him to sin, to basically fall short of what he was commanded to do by keeping his loyalty to his faith and not to appear to contradict that. So all he needed to do here, Your Honor, because these were his beliefs and these were his practices to avoid these associations, was to be accommodated, to be excused. And so again, Judge Garbus' question, the requested accommodation was to not be there that day, to be out of his classroom? Not even to be out of the classroom, to be excused for those 10 minutes or for whatever time. And during those 10 minutes, your client was, his job was to take roll. And so he was really just, I'm just trying to get an answer to Judge Garbus' question. Did your client want to be excused from taking roll? He wanted to stay out of the classroom. Is it for the whole time that Planned Parenthood was going to be present? It would be whenever he would be affiliated with Planned Parenthood. But when was that? Was it the whole period? That would be the first part of the period. Okay. Thank you. And that would be part, that would also be introducing them, that would be bringing them into the classroom, that would be sending students out to go to the teen outreach program. Those were the things that he was trying to avoid. Did your client have the opportunity to disassociate himself from Planned Parenthood during that period? Was he prevented from disassociating himself from the people who were there? Well, I think he would actually be affirmatively prevented from doing that, Your Honor. Wow. That would be him in the classroom taking a public position about what he believes vis-a-vis Planned Parenthood, which is not his position in the classroom. This isn't about what his position is in the classroom. He could disassociate himself outside of the classroom, which he consistently did with his pro-life activities. But just by saying this is a Planned Parenthood presentation and not mine, he could have dissociated himself from any association with the group. Not in his mind, Your Honor. Not in his mind, okay. And not based on his faith. Not based on this being his classroom, Mr. Dis's classroom, facilitating, collaborating, supporting Planned Parenthood. So to me, the biggest problem you have is proving that the termination was for his religious convictions as opposed to misconduct. What's your response to that? There's ample evidence on the record, Your Honor, that he was, in fact, a fantastic teacher and the reasons for his termination are hotly disputed. Whether he did most of what they say he did in the classroom in interacting with the Planned Parenthood employees, he disputes. What is the evidence in the record that at the time of his termination, he was functioning as a fantastic teacher? Point me to the record. The record would be his 2011 performance review, which was done by Barry Phillips, vice principal. Where's that in the record? That is... I believe that's number 152 in the record, Your Honor. Okay. And your recollection of that is that he was described as a fantastic teacher? No, Your Honor. I think I might have taken some artistic license with that. Solid, effective, commendable in other respects. Right. Not fantastic. Those words were not used, Your Honor. But that record tracks his earlier performance reviews as well, 2005, 2007. 2009 was an outlier that was withdrawn by grievance. 2011, he got a good performance review. Right immediately before, Appellee Carol Campbell became classroom teacher, or excuse me, principal at Benson. She reviewed his working file, had documents in it that were supposed to be destroyed by the prior administrator when she left. She had access to all the reprimands based on his pro-life activity from 2005 through 2009. And that is when Carol Campbell... Were those unjustified? Yes, he disputed those. And the very fact that the working file was kept is a break from their normal practice of destroying a working file when an administrator leaves the building, transfers... Wasn't the... I thought the reason for the reprimands was that he was not to identify himself as a school teacher when he was engaged in those activities. Those were the nature of the reprimands, yes. And through that, that's how Carol Campbell originally learned that he was active in this community. And immediately after she reviewed that file, she... But would that be inappropriate to be reprimanded for using your title in any protest? Would that be inappropriate? If you are claiming that you are advocating and representing the school itself, yes. But by naming yourself as a school teacher, aren't you associating yourself with the school? Associating, yes, but that's free speech. That's a true fact for them to be presenting. Right. But isn't that implying that the school supports the message that you are conveying? It could if that's the context. And that wasn't the context here. But to the school, to the school administrators, it was inappropriate to convey or to imply that the school supported his position. The way that they did it was, don't do this at all. It wasn't, be careful the context that you do your statement that you work for Benson. They could have said, make sure you're not appearing like you are speaking on behalf of the school. What they said is, just don't do it at all. Don't talk about where you are. Don't talk about where you're working. And for him, with his personal knowledge of how the school system worked, that was a great... What's the point of saying you're a school teacher if you are, if your goal, if your aim is to challenge Planned Parenthood's policies? What's the goal of saying you're a school teacher in that context? Personal knowledge of what life is like for high school students and what life is like in the classroom and how participation in certain activities, from his point of view, would have a negative effect on those children's upbringing. So that would be the benefit of his personal knowledge. I have seen this. I have witnessed this in the classroom. So it would, I think, very much be a factor for him to rely upon when he's advocating for what he believes. If you have no further questions right now, I'd like to reserve the balance of my time. All right. Thank you, Counsel. May it please the Court, Counsel Bruce Campbell, representing the Portland Public Schools and the individual defendants. This case presents the question whether the school district properly terminated and disciplined Mr. Dis based on a long history of misconduct and disciplinary action. Essentially, beginning in 2006, Mr. Dis had been, received letters of reprimand for demeaning students in class. He'd received throughout his tenure at PPS complaints from parents, from students, from other teachers about his demeaning conduct. And, in fact, he admitted it in his deposition that he said it's great to demean students. So the appellant would have the Court believe that this is all about the teen outreach program presentation in September of 2012. But Mr. Dis's problems predate that. They're consistent for over a decade. And then after, even after the teen outreach program, there was a period like in late 2012 where he received, I believe in a three-month period, 16 complaints from teachers or from students and parents. So given this long and consistent track record of complaints where he's calling, and he's been reprimanded repeatedly for calling students things like bums, slackers, losers, making references to them ending up on 82nd Street, which was a suggestion that they would become prostitutes, saying that they would better fill out their cardboard box, which is an allusion to being homeless. I mean, he was denigrating and degrading students for a long time. Right. Counsel, so his strongest argument is that there's a mixed question here, that there's a genuine issue of fact, because it's not all one or the other. So what's your strongest argument about that? Well, I think in the weight of this overwhelming evidence, not only from, I mean, Mr. Dis does say he was a great teacher, and we heard it today, but that's not, that's his subjective interpretation. Is it your argument that no reasonable juror could find that he was terminated for an improper purpose? Absolutely. Okay. So tell me about that. What's your strongest argument on that point? Okay. The strongest argument there is that there is no, there is no, anything beyond a scintilla of evidence that Mr. Dis has to show that his religion or religious beliefs played any role in PPS's decision to ultimately terminate his employment. And that's, and there is So what time period is fair for the jury to consider? In your view of this evidence, a date of termination. And when you say scintilla, is that the, the, the timeframe to be considered? Well, I think, I think you have to look at the, the, the evidence holistically, but From what time period though? Well, the reason I think, I think the most relevant time period is really probably 2011 forward, but going back to 2006 gives context in the sense that you have the same complaints and the same steadfast refusal to conform his behavior. His argument is you go back to 2006, there's, there are many complaints of this conduct and the school district didn't fire him. So his argument is that that actually makes it a stronger showing that, that it was this incident we're talking about in September of 2011, that really was the, the, the true motivating factor. What is your response to that? My response to that is, it's, it is a very challenging thing to, to fire a public school teacher. You have to go through several steps of progressive discipline. There's the union, takes a very Is it disputed that there was, that there was this evaluation that was removed from his official record, I believe, pursuant to a settlement. I think you know what I'm referring to. Yes. And my question is, it was just representative that, that evaluation was not in fact removed as it should have been. Is, is that correct? Well, Your Honor, I believe it was removed officially from his personnel file. That's my understanding. I think it was, it was still contained within the district's records and we, the reason it was Incoming, so I'm trying to get at, and forgive me for interrupting, but I'm trying to get at, is he right that the incoming principals had that to review and that that, because his argument is that that tainted her view of, of his client? Well, I, I think, I, I guess my answer is I, I don't know if Principal Campbell actually looked at that Okay. Specifically, but The record doesn't tell us? I'm not, it may or may not, I, I, I don't know, I don't know the precise answer to that question, but I guess the point is that that's not what she relied on in, in ultimately recommending disciplinary action after she became principal. I mean, there were plenty of, if you look just in the time period of late 2012, 2013, standing alone with all of the parent, you have multiple requests from parents to get their kids out of her, Mr. Dis' class. He's, they're not learning anything, they're behind, they're falling behind in math, I mean, so there's a competence issue, too, but there's also this remaining issue of degrading and demeaning students. And even after multiple warnings, I think the last, one of the last pieces of evidence there was when he, Mr. Dis filled out, gave a math test, and he named one of the students, Yvonne, who was one of his class members, as being in a burning building, like up 12 feet high, and he couldn't get out, and so it was some student, Yvonne, complained, and he felt humiliated. And so this type of conduct continued, despite numerous requests by the district for Mr. Dis to conform his behavior. Counsel, could we go to the religious accommodation claim that we discussed with opposing counsel? From your view of the record, or from your recollection of the record, was it a request for accommodation made? I don't know where there is anything in the record that Mr. Dis made a request for accommodation. The people from the district who were there, who were present at the meeting, and I believe Mr. Dis' counsel, did not believe that there was a request for accommodation made. We have citations in our brief to that effect. The only meeting I can find in the record with my timeline here is a meeting that took place after the presentations were supposed to have occurred. The enrollment presentations. After the top presentation. So after the top presentation, I think that there was a meeting, and that's, so... If there was a request for accommodation at that meeting, September 26, I think it is, then it's not a request for accommodation about tops, the top is over with. Am I missing something? I don't believe so. So, I don't think there is anywhere in the record where it shows that Mr. Dis made a timely request for an accommodation to be excused from... Not at that meeting, I don't think, although opposing counsel will have a chance to correct me, but that meeting occurred after the tops presentations. But he also said, opposing counsel also said, that his client each day of the night, September 19, September 20, that there was a discussion each day, because those presentations didn't go well, that the administration perceived him to be interrupting, and that he asked to be excused each day. What is your response to that? Not to my knowledge that there was a request to be excused each day. In fact, he showed up and he obstructed the top presenters. And I'd like to back up for just a minute here, if I may. This is not a planned parenthood program. Yes. I mean, this is a federally funded, federally sponsored program by the Department of Health and Human Services to, it's called the Teen Outreach Program, to improve performance... Yes, counsel, and we've read these briefs very carefully. His argument is that he didn't know that the Teen Outreach Program was going to be, is a federal grant that had been given to, and on that particular occasion was going to be implemented by the Planned Parenthood educators, and that when they showed up in his classroom, he felt very offended and concerned, and that being associated in that way violated his religious beliefs. Right? I think that's the claim, pretty clearly. You don't dispute that the presenters were from Planned Parenthood? No, Your Honor. They were from the Planned Parenthood of Columbia and Willamette, but they were following a federally mandated script, not a Planned Parenthood script. Right, we understand that, and so that's part of the difficulty here, because his briefs don't contend otherwise. He's simply contending that he has very strong and sincere religious beliefs, and when these educators showed up, that was news to him, and that he felt implicated in a way that defied his religious beliefs, and his contention is that he asked to be excused. Well, I think the record shows that what he did was he created a hubbub, and he took 20 minutes, even though he sort of disputes that, but he said in his deposition that he might have taken 20 minutes. In fact, when the school district personnel and the presenters said, he did take 20 minutes. It's not really a disputed issue of material fact regarding his delaying of the presentation by taking attendance at a slow pace. Correct. I mean, you have one side saying that's exactly what happened, and Mr. Diss saying, well, it could have. I mean, I was very upset. Let me ask you this. If he had very clearly and unequivocally and calmly, outside the presence of the students, had said, had made the request to be excused because it violated his religious exercise, would the school district have been required to find somebody else to take attendance that day? Would they have been required to accommodate? Your Honor, I don't believe so, because I think that the case law is that a teacher has no right to control the curriculum, and in a sense, that's what Mr. Diss is attempting to do, is to say, control the curriculum, and even, I guess... Had that happened, we'd be having a conversation right now, I think, about how reasonable it was, how burdensome it was to get somebody else in there to take attendance, wouldn't we? And whether his religious beliefs were even implicated with taking attendance. That's the difficulty I'm having with the argument, whether or not taking attendance and not being part of the presentation even implicated his religious beliefs. Your Honor, that's the point I was trying to make, less artfully, is that he's not... Just because he is controlling a classroom, or he has a tutorial classroom, and then a federally... The top program comes in, they make a presentation, and all Mr. Diss has to do is to facilitate that by taking attendance. He doesn't have to be part of the presentation. I think it's a stretch to say that he is somehow being seen as endorsing Planned Parenthood, or even endorsing the content of the federally funded program. What's the best case law support for that? Because what you're really saying is that his religious beliefs weren't implicated, and he's saying they were, that he felt implicated. I'm just wondering, where does the federal case law draw that line? Your Honor, we have, at the tail end of our brief, we have a section on the difference between accommodation... Religion is defined under federal statute, and accommodation. The duty to accommodate only goes to a custom or practice. It doesn't go to a belief. There's good reason for that, because if a public employer had to accommodate every belief, you'd go down a rabbit hole of... You'd have cases like this, and even worse, where any time a public employee said, this is my belief, you have to excuse me, or you have to take steps to accommodate my belief. It would make it almost impossible for a public employer to run a workplace. That's a ruling that would be very difficult at summary judgment, and I don't think it's one you're relying on. I think you're relying on the argument that, overall, the district had a legitimate non-discriminatory reason, and there is not an adequate showing of pretext. It's not easy to show pretext. It's a very heightened burden of proof, but I just want to make sure I'm understanding the priority of your argument. That's the correct priority, because ultimately it doesn't lead, even the accommodation request argument doesn't lead anywhere, because you have this mountain of evidence that there were valid non-discriminatory reasons for taking disciplinary action. On the statutory claims, you only have about a minute. Do you want to speak to the qualified immunity? Qualified immunity, I mean, the case law is that there's, we're looking at, even assuming that Mr. Diss is speaking on a matter of public concern, which I don't believe he is, because he's speaking, the speech is an outgrowth of his position as a teacher, so it's not a matter of public concern, but even if it were, then you get into the Pickering balancing test, and when you have Pickering balancing, the courts have said it's almost impossible to prove qualified immunity, because it's done on a case-by-case basis. So I think, without question, the individual defendants would have qualified immunity, even if Mr. Diss could make a prima facie case, but I don't believe he can make a prima facie case. So you want summary judgment on qualified immunity, saying that no reasonable jury could find other than to give these people qualified immunity? That's what you're asking for? Well, as a backup to relief or summary judgment on the underlying claims. There seems to be a fact question, whether or not he asked for a religious accommodation. I don't know if you're, do you dispute that he asked to be excused from being present when these people were presenting their program? I will dispute that he, the district did not understand that Mr. Diss was asking for an accommodation based on religious grounds. Yes, that we do dispute. But do you understand that he was asking to be excused from being present, for some reason, in his mind? I believe the record shows that he said he felt sick, but he did not, it wasn't couched in terms of a religious accommodation. So we do dispute that. But is there anything in the record that says at the time of the presentation he asked to be excused? I don't have a clear answer on that, Your Honor, but I guess even if he had said I want to go home, I can't do this anymore, there was nothing to show that that was based on a request for religious accommodation. And again, even as Your Honor noted, even if that were the case, ultimately it didn't lead anywhere because the district had multiple grounds for terminating Mr. Diss's employment based on his teaching performance and misconduct. All right, Counsel, you've exceeded your time. Rebuttal? Thank you. Thank you, Your Honor. First of all, where Mr. Diss requested reasonable accommodation, his declaration, Excerpt 27, his attorney's recollection of that during her deposition, Excerpt of Record 81. So, Counsel, that, she's definitely talking about the meeting. Yes. Is he as well? I can just flip to his declaration quickly. But was he talking about at the meeting? Yes, at that meeting he requested. But the TOPS presentation was over. That's another point I wanted to address, Your Honor. Okay. So what am I missing here? It had been going through the year. As late as February 2013. It was going to continue in his classroom? It was continuing to recruit. It was continuing to take students out for the year-long program. From his classroom? From his classroom. Thank you. Okay. That's very helpful to me. So as late as February 2013, he was still being criticized for his interactions with Planned Parenthood. Understanding now that the TOPS presentations weren't done, at least hadn't been completed as of the time of the meeting, what is your answer to Judge Garvis' question? What accommodation was requested? He requested to be excused from the classroom. Okay. Thank you. And just as far as going to this being a preference, this is not a preference. The discounting of his belief, case law doesn't support that belief is not enough. Either way, he expressed his desire to observe and practice being disassociated, not affiliated with Planned Parenthood. Ms. Campbell specifically started targeting Mr. Dis in the 2011-12 school year after she reviewed his file. She testified she did not have any problems with his performance or behavior for the 2001, excuse me, 2011-12 school year. That all changed after his interactions with the teen outreach program Planned Parenthood presenters. All his discipline came after that. Four out of the five disciplines that they relied upon for his termination resulted directly from his interactions with the Planned Parenthood employees. And when they're talking about complaint after complaint, they reference 16 complaints that are early in their supplemental excerpts. Those are complaints not about him. Those are complaints mainly about being transferred out of another teacher's classroom. In Jeandre Carbone's declaration in the supplemental excerpts, she says that was the time where a bunch of students were transferred from another teacher's classroom to his. So if you read those complaints, it's not all about Mr. Dis and his bad behavior. There's a dispute. He was receiving letters of recommendation from his coworkers saying Mr. Dis is a good teacher. He has said he's been consistent. He received a satisfactory or better review in 2011 before Ms. Campbell became involved. But you know the case law in this area. There's also deposition testimony, as Judge Wallace pointed out, from your client talking about this allegation that he had demeaned students in his response and so forth. In order to show an employer can be wrong and not discriminate if that's they're concerns about his performance teaching. So what is your response to that? Absolutely. That's true, Your Honor. Those were issues raised, as they point out, back to 2006, 2007, where they said don't use this language. And he stopped. It was silent on that note for a very long time. And they point to a few different examples where maybe he used language that they would disagree with. But if you read his declaration and if you see the context, which you don't get on summary judgment, you would understand he wasn't saying they are bums. They are going to do this. It was always the firm but fair discipline of this behavior is inappropriate. This is what you need to do. That's what is reflected in his reviews, the firm but fair approach. So for them to now say it's all based on demeaning, demoralizing students, that's not entirely supportive of the record. That's disputed. All right. Thank you, counsel.  The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, Garbis